**STATE**

v.

**Michael J. MARKARIAN.**

**No. 87–272–C.A.**

Supreme Court of Rhode Island.

Dec. 20, 1988.

James E. O'Neill, Atty. Gen., Caroline Cole Cornwell, Asst. Atty. Gen., for plaintiff.

John H. Hines, Jr., Providence, for defendant.

## OPINION

**MURRAY, Justice.**

This case is before the court on appeal by the defendant Michael J. Markarian from Superior Court where it was tried before a justice sitting with a jury. He was convicted of one count of obtaining property by false pretenses and one count of forgery. We affirm.

Pertinent and relevant are the following facts derived from the record. The defendant operated his own jewelry business, Van Scoy Diamond Mines. During the spring of 1985, Markarian was in the process of opening a second branch of his store. On May 24, 1985, defendant deposited a forged check for $88,766.90 in his personal savings account at Fleet National Bank. About ten days later, Markarian arranged to wire-transfer over $88,000 from his personal savings account to a business account he had at the Rhode Island Hospital Trust Bank. After the transfer to Rhode Island Hospital Trust Bank, Markarian withdrew approximately $88,000 in cash from his account. Markarian admits that he received roughly $88,000. At trial, however, Markarian testified that he had no knowledge that the check was forged.

The forged check was made out to Michael Markarian, and was drawn on an Automobile Insurance Plan Service Center (AIPSC) account with Citizens Trust Bank. AIPSC is an insurance business. The forged check was one of a number of blank checks eventually discovered missing by AIPSC employees. At trial, the prosecution offered no evidence regarding how Markarian acquired the forged check.

Markarian, however, did offer an explanation of how he acquired the check. He testified that he received the check from a customer known to him only as Mark. According to Markarian, Mark gave him the $88,766.90 check as payment for a diamond that Markarian was to procure for Mark. The defendant testified that after receiving and depositing the check, he had acquired a diamond, and Mark appeared at his office at Van Scoy Diamond Mines. Mark examined the diamond, and expressed his dissatisfaction. The defendant testified that at

this point, he gave Mark approximately $80,000 in cash, calculated by the $88,-766.90 check defendant received from Mark, less a ten percent commission. The defendant further testified that he did not ask Mark to sign a receipt for the roughly $80,000 in cash that Markarian allegedly handed over to him on that occasion. Although Markarian denied that he had any knowledge that the check was forged, the jury disregarded this testimony as a guilty verdict was returned on both counts.

The defendant asserts three grounds for reversal. First, defendant argues that an essential element of both obtaining property by false pretenses and forgery is an identifiable victim, and that the prosecution failed to prove this essential element of each of the crimes charged. Second, defendant contends that there was a material variance between the information and the evidence as victims were named in the information but not proven at trial. Third, defendant maintains that the trial judge erred in his instructions to the jury because he failed to charge with regard to a victim.

## I

▇ The defendant asserts that an essential element of both obtaining property by false pretenses and forgery is an identifiable victim. He further contends that this element of both offenses was not proven by the prosecution. On these grounds defendant maintains that the trial justice erred in denying his motion for a judgment of acquittal. However, we hold that a victim is not an essential element of either obtaining property by false pretenses or forgery, and affirm the trial justice's denial of the motion.

Today in Rhode Island the crimes of obtaining property by false pretenses and forgery are statutory offenses. G.L.1956 (1981 Reenactment) § 11-41-4; G.L.1956 (1981 Reenactment) § 11-17-1. As regards statutory crimes, the language of the statute setting forth the crime contains all the essential elements of the offense. *See State v. Jorjorian*, 82 R.I. 334, 340-41, 107 A.2d 468, 470 (1954). Hence to discern the essential elements of obtaining property by false pretenses and forgery, we must examine the language of the statute which sets forth each offense. Obtaining property by false pretenses is defined by § 11-41-4, which provides:

> "Obtaining property by false pretenses * * *.—Every person who shall obtain from another designedly, by any false pretense or pretenses, any money * * * with intent to cheat or defraud * * * shall be deemed guilty of larceny."

In interpreting a statute, the court first must give the statutory language its plain and ordinary meaning. *McGee v. Stone*, 522 A.2d 211, 216 (R.I.1987); *State v. Gonsalves*, 476 A.2d 108, 110 (R.I.1984). Thus, the essential elements of obtaining property by false pretenses are that the accused (1) obtain property from another designedly, by any false pretense or pretenses; and (2) with the intent to cheat or defraud. These two elements are derived from the plain meaning of the statute.

Forgery is also a statutory offense and is defined by § 11-17-1. The statute provides:

> "Forgery * * *.—Every person who shall falsely make, alter, forge * * * or procure to be falsely made, altered, forged * * * any public record, or * * * order * * * for the payment of money * * * with intent to defraud, or who shall utter and publish as true or shall procure to be uttered and published as true any such false, forged, altered * * * record * * * or other writing aforementioned, knowing the same to be false, forged, altered * * * with intent to defraud * * *."

Thus the essential elements of forgery are either: (1)(A) falsely making, altering, forging, or procuring to be falsely made, altered, or forged, any public record, or order for the payment of money, or other writing listed in § 11-17-1; or (1)(B) uttering and publishing as true or procuring to be uttered and published as true, any false, forged, or altered record or other writing listed in § 11-17-1, knowing the same to be false, forged, or altered; and (2) with the intent to defraud. Forgery has two essential elements, the first element requiring

one of its two alternatives, either (1)(A) or (1)(B). These two essential elements of forgery are derived from the plain meaning of the statute.

If there is no ambiguity in statutory language, the plain meaning of such language is authoritative, and no further statutory construction is necessary. *State v. O'Rourke*, 463 A.2d 1328, 1330 (R.I.1983); *Rhode Island Chamber of Commerce v. Hackett*, 122 R.I. 686, 690, 411 A.2d 300, 303 (1980). Hence, for the statutory crimes of obtaining property by false pretenses and forgery, a victim is not an essential element as neither the word victim nor its synonym appears in either statute. At oral argument, however, defendant's counsel asserted that implicit in the phrase "intent to defraud" is the concept of a victim, and that based upon this implication, we should require an identifiable victim as an essential element. However, we find that this interpretation would transmute the phrase "intent to defraud" into "intent to defraud a particular person or entity." This interpretation would deviate from the plain meaning of the statute, and we decline to subscribe to such an interpretation.

Case law supports our construction that obtaining property by false pretenses and forgery do not require proof of a victim. As regards obtaining property by false pretenses, it is true that prior case law has not definitively stated whether a victim is an essential element under § 11–41–4. *See generally State v. Aurgemma*, 116 R.I. 425, 358 A.2d 46 (1976). The defendant points out that false pretenses is a larceny type of crime. LaFave & Scott, *Substantive Criminal Law*, § 8.7(a) at 383 (West 1986); 3 *Wharton's Criminal Law*, § 423 at 455–57 (Torcia 14th ed.1980). He argues that at common law, an essential element of larceny was that the state allege and prove the nature of the legal entity from which goods were taken. *State v. Colasanti*, 100 R.I. 431, 436, 216 A.2d 700, 702 (1966); *accord*, LaFave & Scott, *Substantive Criminal Law*, § 8.1(a) at 328. Based upon this relationship to larceny, defendant maintains that we should read this common-law requirement of a victim into our

present statute. However, although it is true that the crime of obtaining property by false pretenses is related to larceny, false pretenses never existed at common law, but is solely a creature of statute. 3 *Wharton's Criminal Law*, § 423 at 455; *see* LaFave & Scott, *Substantive Criminal Law*, § 8.1 at 330–32. Furthermore, when the Legislature enacted the present statutory offenses related to larceny, such as obtaining property by false pretenses under § 11–41–4, it did not intend to treat those statutory crimes deriving out of common-law larceny as the common-law offense with respect to supplying proof of the elements giving rise to the offense. *See State v. St. Pierre*, 118 R.I. 45, 51, 371 A.2d 1048, 1051 (1977). Therefore, we find no basis in current case law that would require a victim as an essential element of obtaining property by false pretenses.

In regard to forgery, case law has interpreted the offense under § 11–17–1 to have essential elements that are in accord with our definition today. *See generally State v. Mulholland*, 111 R.I. 154, 300 A.2d 271 (1973). Forgery, unlike false pretenses, does not require that anyone actually be defrauded of his property. One who has never had a chance to pass his forged document, or whose forgery is spotted when he tries to pass it, is still guilty of forgery. LaFave & Scott, *Substantive Criminal Law*, § 8.7 at 407; *see State v. Williams*, 134 Ariz. 411, 415, 656 P.2d 1272, 1276 (1982); *Martin v. United States*, 435 A.2d 395, 398 (D.C.App.1981). It would be illogical to argue that the common-law requirement for larceny of a victim applies to forgery as it is unnecessary that a forged document be passed or for any loss to occur for the crime of forgery to be committed. We find no persuasive authority or rationale that requires a victim as an essential element of this offense.

When considering a motion for judgment of acquittal, a trial justice must determine whether the evidence offered by the state is capable of generating proof of guilt beyond a reasonable doubt. *State v. Caruolo*, 524 A.2d 575, 580–81 (R.I.1987); *State v. Wilshire*, 509 A.2d 444, 452 (R.I.1986).

The evidence presented at trial suffices to establish the essential elements of sections 11–41–4 and 11–17–1. Therefore, the trial justice correctly denied defendant's motion for judgment of acquittal on the grounds of failure to prove the essential element of a victim.

## II

The defendant's second argument is that there is a material variance between the information and the evidence offered at trial. He contends that since the information charging him named the victims Fleet National Bank and Citizens Trust Bank in each count, the state's alleged failure to prove any victim at trial constitutes a material variance. The defendant asserts that this variance has prejudiced him in two ways. First, he was unable to defend himself. Second, he could be placed in double jeopardy by charges that he defrauded Rhode Island Hospital Trust Bank or AIPSC. The defendant maintains that such material variance entitled him to a judgment of acquittal. However, we find defendant's contentions without merit.

■ Variance arises when evidence offered at trial establishes facts different from those alleged in the indictment. *Dunn v. United States*, 442 U.S. 100, 105, 99 S.Ct. 2190, 2193, 60 L.Ed.2d 743, 749–50 (1979). The general rule that allegations and proof must correspond is based on the rationale that the defendant must be informed definitely as to the charges against him, and protected against another prosecution for the same offense. *Berger v. United States*, 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314, 1318 (1935). However, a variance should not be regarded as "material" if the indictment and proof substantially correspond, or if the defendant could not have been misled at trial or deprived of protection against another prosecution for the same offense. *Id.* at 83, 55 S.Ct. at 631, 79 L.Ed. at 1318–19.

■ In Rhode Island, G.L.1956 (1981 Reenactment) § 12–12–10 deals with the discharge of a criminal defendant on the grounds of variance. Section 12–12–10 provides:

"A defendant shall not be acquitted * * * on the ground of variance between the allegation and proof if the essential elements of the crime are correctly stated in the * * * information * * * unless he is thereby prejudiced in his defense. He shall not be acquitted * * * by reason of failure to prove unnecessary allegations in the description of the crime * * *."

Under § 12–12–10 as long as the essential elements of the crimes charged are stated in the indictment or information, a defendant's conviction may be reversed only where the variance is prejudicial to his defense. *State v. McKenna*, 512 A.2d 113, 114–15 (R.I.1986); *State v. McParlin*, 422 A.2d 742, 744 (R.I.1980). Furthermore, if the defendant truly was confused as to the crimes with which he was charged, he had the right to file for a bill of particulars under Rule 7(f) of the Superior Court Rules of Criminal Procedure. *State v. Ferreira*, 463 A.2d 129, 133 (R.I.1983).

■ We are convinced that in the present case defendant was not prejudiced in his defense by the naming of the banks in the information. Markarian's defense rested on the theory that he received the check in the operation of his legitimate business, and that he had no knowledge of its forged nature. Had Markarian contended that the check was genuine, or that the bank had withheld payment on the check, defendant conceivably might have been prejudiced. However, he did not dispute that the crimes occurred, but rather defended by arguing that he was not the perpetrator as he did not have the requisite intent to defraud. We hold that Markarian's defense was not prejudiced by the claimed variance.

■ The defendant further asserts that the supposed material variance would subject him to double jeopardy, as he may be subjected to later charges alleging that he defrauded either Rhode Island Hospital Trust or AIPSC. However, this court has stated that "[u]nless or until a second prosecution is commenced, [the] defendant's double-jeopardy challenge is speculative

and not ripe for consideration * * *." *State v. McKenna*, 512 A.2d 113, 115 (R.I. 1986). Therefore, even assuming *arguendo* that a material variance existed, defendant's claim of double jeopardy would not be properly before the court.

When considering a motion for a judgment of acquittal, the trial justice must determine whether the evidence offered by the prosecution is capable of generating proof of guilt beyond a reasonable doubt. *State v. Caruolo*, 524 A.2d at 580–81; *State v. Wilshire*, 509 A.2d at 452. For the above-stated reasons, we affirm the trial justice's denial of the motion for judgment of acquittal based on material variance.

### III

■ Markarian's last contention is that the trial justice erred in his instructions to the jury as he failed to charge that an essential element of both offenses is a victim. However, claims of error are deemed waived unless the specific grounds for the claimed error are effectively raised at trial. *See State v. McMaugh*, 512 A.2d 824, 830 (R.I.1986). To object to jury instructions, Rule 30 of the Superior Court Rules of Criminal Procedure provides that:

> "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires * * *."

*See also State v. Caprio*, 477 A.2d 67, 73 n. 10 (R.I.1984). The trial record reveals that the defendant failed to object to the trial justice's failure to instruct on proof of a victim; therefore, the defendant has waived this issue on appeal.

We affirm the judgment of conviction. The defendant's appeal is denied and dismissed, and the papers are remanded to Superior Court.